Good morning. Good morning. Please proceed. Good morning, Your Honors. May it please the Court. My name is Annie Avery, and I am here under the supervision of Anne Traum, representing Appellant Leonard Porto in this matter. At this time, I would like to reserve three minutes for rebuttal. Keep your eye on the clock. We'll try to help you. Of course. Your Honors, there was only one homeless shelter in Laguna Beach, and Mr. Porto, who was homeless at the time, was denied access to it based on its local's preference. This left him with no option but to sleep outside or in his car, for which he received a warning ticket. Both policies, the local's preference and the sleeping ordinance, were created by Laguna Beach to fence out and get rid of homeless people. Let me ask you this, Counsel. If I understand the record correctly, Mr. Porto declined to sign at any time the registration and rules form, which included a waiver of liability. Is that correct? Yes, Your Honor. However, the liability waiver actually highlights the error that the district court made here. It highlights the factual issue that was presented to the court at summary judgment and shows why summary judgment was actually improper in this case. The liability waiver that Your Honor refers to was first presented to Mr. Porto in October of 2010. And by then, Mr. Porto was already injured. He had been at the shelter every... With respect, we're in a federal court. In order to have, in order to be here, he has to have standing. He can't have standing if he had no legal right to be in the facility. If he was unwilling to sign the registration and rules form, neither he nor anybody else unwilling to sign could be there. Under the circumstances, how does your client have standing to start out to challenge the local criteria aspect of this ordinance? Your Honor, Mr. Porto has standing to challenge the local's preference because he was denied access to the shelter before he was handed the waiver. Before the existence of the waiver, he went to the shelter. We see in the record on page 285, which is Mr. Porto's shelter, he could, for Your Honor's... By access, you mean to come into the facility or do you mean to sleep there? Sleeping access, Your Honor. Okay, but he couldn't have slept there in any event unless he signed the registration and rules form, right? Nobody could. Whether they were local or anywhere else. Not before the registration form existed, Your Honor. He went to the local shelter and the district court found Mr. Porto became homeless in January of 2010. He wasn't presented the waiver until October of 2010. And the record at page 459, Mr. Porto testifies in a declaration that the first time he went to the shelter, staff told him that sleeping there was not an option because he was not a local. So before the registration form even existed or before he was even handed the registration form, he was denied access and that is his injury. Where in the record, you say at 459 it makes it clear that he was denied access based upon the local criteria before there was a form. Is that correct? Yes, Your Honor. At page 459 which is a declaration by Mr. Porto attached to his opposition. That's his declaration. Is there anything from the city that confirms that? I understood that this was a form that had been there from the beginning. Am I wrong? Your Honor, the city has not disputed the fact that Mr. Porto was not presented the waiver until October of 2010. Okay, let's say argue that's true. That's his declaration. But if they had such a form and everyone was required to sign it before he or she spent the night in the facility, don't you have a standing problem? No, Your Honor, because he was injured before he was handed the waiver. But you can't be injured unless you can sleep there and he couldn't sleep there because he didn't sign the form. That's not true, Your Honor. He was not granted, he was denied access to the shelter in early 2010 at his first appearance at the homeless shelter and he was not handed a waiver at that time. Or the record does not reflect that he was handed a waiver at that time. What is the date of that event where you say he wasn't presented a waiver? I'm so sorry, Your Honor, off the top of my head, I don't have the date there. But at page 459 he does say it was the first time he went to the shelter. And he did become homeless in early of 2010. Is that something that's within the statute of limitations? Your Honor, there is no statute of limitations problem here because this is an as-applied challenge. So Mr. Porto filed his case in a timely fashion because it was within two years. But looking briefly at page 285 of the record, which was Mr. Porto's deposition testimony, he says that he was denied access to the shelter by staff based on the local residency requirement. At the top of that page he says he's asked on how many occasions he was told sleeping there was not an option and says just about every time at the door. And he's asked how many times that was and he says he doesn't know. Sometimes he would go there two or three times a day for food or showers. And the city clarifies not about showers, we're talking to stay overnight. And he says, well, I've always known, everybody's always known, staying there overnight was not an option because I was not a resident. And further down the city asks at line 17, did anyone ever specifically tell you that the residency requirement was the policy or requirement? And he says, quote, every single shelter employee says that. So that page of the record shows that there is admissible testimony that he was injured prior to being presented the waiver and he was evaluated at the shelter. And the district court construed this testimony to mean that he misunderstood the local's preference and was denied access simply because he refused to sign the waiver. But the district court is simply choosing to disbelieve Mr. Porto's testimony and adopting almost verbatim the city's argument at summary judgment. And that was error because there is a dispute of fact related to this and that testimony highlights that. So moving on to the merits of Mr. Porto's claim, which is specifically about the local's preference. And the local's preference violates equal protection even under rational basis review because it was created and implemented for an impermissible purpose, which was to fence Should this court evaluate the constitutional question, assuming you get past standing, should this court evaluate the constitutional question before the district court actually evaluates it? Yes, Your Honor. This court could reach the merits on this claim. It has been fully reviewed. There is enough to rule on it here. Would it be better for the district judge to decide it before it was decided here? Not necessarily, Your Honor. It has been sufficiently briefed that it could be dealt with on appeal by this court. And the local's preference does fail rational basis because it was motivated by animus towards homeless people. And the Supreme Court has said that fencing out undesirables is or indigents is impermissible. I don't quite understand that. I thought it was there for indigents and for homeless people. It's just that they say that you have to, are you saying that the requirement itself is that you have to have a home? No, Your Honor. The scheme that the city created in creating the homeless shelter was essentially a shelter with a local's preference that had limited access and then ticketed people who couldn't get into the shelter under the sleeping ordinance. So looking at this entire scheme and particularly the record at pages 129 or 112 where we see city council minutes where the city council members are saying things like we think we're at capacity. We want to say enough. We're full. And we don't want to become a magnet for homeless people. And in fact actually at 117 and 129 of the record we see pretty clear statements that the shelter was created so the city could ticket homeless people under the anti-sleeping ordinance that they created as part of the scheme. You make this sound like a giant conspiracy in what is a serious problem for the entire state. Is it your position that if the city of Laguna Beach did not take an indefinite number of homeless people from wherever that they were in constitutional violation? So let's say there are 100,000 from San Francisco and they pull into town and say hey here you've got a great shelter. Let's go. And they don't have the room. Does that mean they're in violation? Just because they decided they are going to provide some shelter for a certain number of people. Nobody can afford to do it for everybody. No city can. So it sounds like you're making what at least arguably was a beneficial act into an act of some real cynicism. Is that your position? Your Honor, it could be possible. There is no requirement for the city to have as you mentioned unlimited space. Or any. At their homeless shelter. Or any. You're correct Your Honor. Although that could present other potential issues. And the city could have enacted a bona fide residency requirement which would be constitutional. How would that read? So Your Honor, the city could constitutionally create a way of ensuring that homeless people who are bona fide residents of the city could access the shelter first. But do it without this fixed date residency requirement. The May 2010 version of the policy. What would you do? You're the head of the shelter right now. How would you work that? How would you segregate giving, if you will, a priority to people who have been in the city for many years? You don't want to use dates, so what would you use? Well, Your Honor, the Supreme Court in Zobel said that it is irrational to dole out benefits based on length of residency. So a bona fide residency requirement wouldn't be based on length of residency, but rather on the fact that this person or the individual is actually a resident and intends to reside in and remain in the city. And that would be something as simple as for example, Mr. Porto's case, he was a fixture at the shelter. We see on page 285 he was there two or three times a day for things that didn't involve sleeping. The people at the shelter knew that he was a resident. And so... How do you define a resident? Somebody that comes there in the middle of the day looking for food? As someone who, Your Honor, would come there and come there repeatedly with intent to make a stay there. The extent that he had a place, it was in the city, I guess. Yes, Your Honor, yes. Mr. Porto was, he moved to Laguna Beach. He chose to make a residence there, to make it, to build his life there. And he wasn't, he wasn't, to borrow a phrase from the case law, a transient. Someone who was simply passing through or coming just for however long. He was someone who moved there and wanted to stay there. What was the address on the registration of his automobile? What was the address? Your Honor, I don't know. That's not in the record. Laguna Beach? I don't know, Your Honor. It's not in this record. If it wasn't, does it make a difference? I don't think that it does, Your Honor, because Mr. Porto moved to Laguna Beach with intent to stay there. He intended to create a life for himself there and that means that he was a resident of as much of a right to the shelter as anyone else who had been living there for any amount of time. Where in the record do we find his declaration that he intended to become a resident of the city? I am unsure of a specific page number at this time, Your Honor, but in his declarations. The representation of the court that he made such a representation? Yes, he says in his declarations that he does derive pleasure from being near the ocean. He chose Laguna Beach as a place that was calming to him and somewhere that he wanted to be and remain. In particular, he mentions the fact that he is a scuba diver and likes to take advantage of the scuba diving there. He chose Laguna Beach as a place that he wanted to live. Do you want to save any of your time? Yes, I would like to reserve time. Thank you, Your Honors. Good morning, and we know you're from Laguna Beach. Thank you, Your Honor. We often get that error made. May it please the court, Ajit Singh Thin, Rutan and Tucker, on behalf of Appellees. This action originally concerned the rights of a homeless person. Mr. Porto related to a municipal ordinance and the policies that the only municipally funded homeless shelter in Orange County, the ASL. Judge Carter of the Central District granted two motions to dismiss and ultimately a motion for summary judgment in favor of Appellees. A lot has changed since Appellant initiated his action and even since he filed his informal brief with this court back in January of 2015. Of critical importance and in direct contradiction to the statements he made to both this court and the district court, Appellant revealed in recently filed declarations that he was placed in housing in December of 2012. In addition, notwithstanding his argument over the years that the local's criteria prevented him from staying overnight at the ASL, Appellant has since described in declaration the prospect of staying at the ASL as intolerable and unbearable, stated that there are multiple reasons he never entered the lottery to obtain a spot at the ASL, and stated that he preferred sleeping in his vehicle to staying at the ASL. Not only do these revelations alter the nature of the case and make Appellant's request for declaratory relief and injunctive relief moot, which he has essentially conceded in his reply brief, they reaffirm the district court's determination that Appellant lacks standing to challenge the local's criteria and the ordinance to begin with. Let me just go back for a second to something your opposing counsel said. Yes, sir. She indicated that Mr. Porto came to the shelter and was never offered or asked to sign any registration and waiver form for some period of time. What's your response to that? So, your honor, it may in fact be the case that initially when the shelter opened there was not this form, and later on the form was developed, so I don't necessarily dispute that. However, Mr. Porto never went through the process of determining whether or not he was a local to begin with. The Friendship Shelter, the organization that runs the alternative sleeping location, they would essentially evaluate whether or not a person is a local or not to make that determination. All we're hearing from Mr. Porto in his declaration is some employee told him he's not allowed to stay there because he's a local, but he never went through the process. And we know that because we have a declaration from Richard Scott, who was a supervisorial employee at the Friendship Shelter. He's the one who noted that the Friendship Shelter is for those that are locals and those who have applied to be a local but were found not to be a local. Mr. Porto wasn't on this list. And we provided that declaration from Mr. Scott at summary judgment. Where is that in the record, please? That is one second, your honor. Record page 291. It's a declaration from Mr. Scott that appellees filed in support of their motion for summary judgment. So the issue of standing on the locals criteria came up at summary judgment. We provided this declaration from Mr. Scott, who was a supervisorial employee. Mr. Porto provided I believe his own declaration, but never provided any sort of evidence from any employees at the ASL to indicate that they did in fact say the things that he said. The magistrate judge who reviewed all these issues reviewed them in depth and found that these were just conclusory allegations from Mr. Porto related to it. Now, the other issue that came up is Well, you're saying that he hasn't shown that he was denied permission to sleep there because he was not a local. Correct. So why are you saying he hasn't shown he was never denied permission to sleep there, period? That's not necessarily the argument, but I would say that he has never shown that he went through the process to determine if he was a local or not. It's entirely possible that the shelter was at capacity and it was turning away people, but I don't know what the occasion was for Mr. Porto to be turned away. And the reason the district court dismissed was what? The reason the district court dismissed was because he had not gone through the process of being determined to be a local and also failed to sign the registration and rules form, which was undisputed. He stated at deposition he would never sign the registration and rules form. And during this appeal, while it's referenced in their opening brief and reply brief, appellant doesn't actually challenge the liability waiver that's part of the registration and rules form. And in addition, we have this new testimony from Mr. Porto in these two declarations in which he states essentially he would never stay at the ASL to begin with. He found the conditions there to be intolerable. And he said there were multiple reasons why he never wanted to stay at the ASL. And that he preferred sleeping in his vehicle over staying at the ASL. So there's no injury here to begin with. He never would have stayed at the ASL even if he had been given the opportunity to do so. Is it your position that because he wasn't given a ticket, he wasn't actually prosecuted for sleeping in his car, that he doesn't have any injury? Correct. He was not prosecuted, so there's no concrete injury. He also did not face a credible threat of enforcement, which is referenced in the opening brief and reply brief, or excuse me, is argued in the opening brief and reply brief. But he never faced a credible threat of enforcement because he had been homeless apparently for over two years in Laguna Beach, could only attest to four instances in which the Laguna Beach Police Department contacted him. And not on one occasion had he actually been fined, arrested. There had been no, any type of prosecution imposed upon him. And then we also have the revelation that... What's your response to Porto's citation of Spurgeon versus Massacre? Spurgeon versus Massacre case, the Ninth Circuit case decided in 2014? Your Honor, and that's for the basis for a credible threat of enforcement, I believe. And again, I would say that he did not face a credible threat of enforcement, in particular, because in 2012, he had only been, he had only interacted with the police four times, was only warned once. During that period of time, the city, well, there's actually no indication of what the threat of enforcement was during that time. He alludes to some citations that occurred in 2011 by the city, but most of these citations were actually for violations of different laws, not for this particular ordinance. And then we know in December of 2012, a mere couple months after the city filed its second motion to dismiss, he was placed in housing. And the second motion to dismiss was actually only later granted in May of 2013, which is six months after he was placed in housing. However, the court at that time... I'm procedurally now confused. This appeal was filed in 2014? This appeal was filed in 2014. Why was it not, why did we not get a motion that the whole case was moved? Mr. Porta never indicated to us or to the court that his housing status had changed. How do you know it now? We only became aware of that in 2016 when he filed these two declarations in a separate matter, the Glover matter, which is a district court matter. In that matter, Mr. Porta testified that he had become housed in December of 2012. At that point, we were actually through our first round of briefing before this court, and then the court decided to have a second round of briefing with the benefit of pro bono counsel from Mr. Porta. And at that point, we brought this to the attention of the court by way of our motion for judicial notice, because obviously it moots both of his requests for declaratory and injunctive relief, and then it really shows that a lot of these other issues, I think, are painted in favor of the city as well. If he, if what he alleges occurred and he got the housing afterwards, but there was a period of time when he didn't have that, does that moot what happened before he got housing? Since I gather in this case, he seems to be making a facial challenge, but sometimes it seems like it's not. It's an as-applied challenge. But does it survive? We are not arguing that his claims for damages are moot. His claims for declaratory relief and injunctive relief are moot, and that's fairly clear from the case law. In reply, appellant doesn't even contest that. However, on the issue of damages related to both the local's criteria and enforcement of the ordinance, there's no standing to begin with. There's no concrete injury. And, you know, with regard to the local's criteria, again, his declarations make it clear he never would have stayed there to begin with. So even if he was denied for a reason other than his failure to sign the registration and rules form, he would not have stayed there. He has said that he never wanted to stay there. It was intolerable. Where in the record does that statement appear? That's in the motion for judicial notice. What's the ER or the SER? I don't believe that there is an ER or SER number because it's a motion for judicial notice, but it's his October 27, 2016 declaration, which was attached to October 27, 2016 declaration from the Glover matter, which was attached to our motion for judicial notice as Exhibit B, I believe it was. And it was paragraph 31. He describes the prospect of sleeping inside the ASL as intolerable, and then he also states that the conditions at the ASL were all reasons why I never entered the lottery to try to get a place to sleep. So it's Apelli's contention that this is essentially just an academic exercise at this point. Has the city ever taken a position on the merits of this policy in this litigation? On the merits of the local criteria? We have, Your Honor, at summary judgment. We made the argument regarding the basis, the reasons for it. However, I don't believe that it's if the court finds that there is standing, I don't believe that this court should be the one to rule on it, given that there's still more facts to develop. Mr. Porto never filed for relief in the district court. He never filed a motion for judgment on the pleadings, never filed a motion for judgment on the pleadings. I don't want us to reach the question of whether this is irrational or not. No, Your Honor. I don't believe that the court would want to own, given it's a novel issue related to the right of intrastate travel, which hasn't been decided by the Ninth Circuit or by the Supreme Court. I don't see a reason why the court would need to entertain that issue. Can I change a little bit back to the incident where he was awakened and given the citation? Admittedly, it was not going to be prosecuted, but I would think that would be quite upsetting to have somebody shine a light in your eye and give you a citation. He indicated, I think, that he felt indigestion, he was upset, he was nervous. Does that confer any kind of a standing? I think, Your Honor, it's getting him closer to standing, but I don't believe that that is enough to get to standing. I think whenever you have an interaction with the police, it's possible that people will feel worried, upset, threatened by it, but there needs to be some level of objectivity that gets that person over the threshold to get to a concrete injury. And there are cases here within the Ninth Circuit that talk about arrest, fines, property loss. So it doesn't actually have to be conviction, it doesn't actually have to be prosecution, it can be something lower than that, but it can't be as low as what Mr. Porto is talking about. What's your best case for that? Going as close to his factual circumstances as possible. The best case for that would probably be Larrabee, City of Sacramento, or Anderson v. City of Portland, which talk about when you actually do meet that threshold before getting prosecuted. But as it relates to cases that talk about generally the issue of standing, cases like Spokale before the U.S. Supreme Court, obviously those types of cases. But I take it your position is that even if this were a sufficient threat of prosecution, that he hasn't shown he received that threat as a result of not being able to get into the shelter. Yes, Your Honor. I think that would be our position as well. But the issue as well is just that there was no credibility behind that type of threat. Even if it's not concrete injury, they could still satisfy standing through concrete threat of enforcement, but they don't get there either based on the fact that the city wasn't going out citing numerous people for violations of the ordinance. Mr. Porto had been homeless in Laguna Beach from approximately January of 2010 to December of 2012 and can only attest to, I believe, four incidents in which he had interacted with the police department and only one of which involved an actual warning for a violation. So I don't believe that we get there, Your Honor. When you look at the local's criteria, doesn't the ASL actually only accommodate 45 people? Correct, Your Honor. I think there's an acknowledgement that the homeless population is much greater than that in Laguna Beach. It's difficult to know exactly, Your Honor. The homeless population in Laguna Beach fluctuates. At times it could be greater than 45. There certainly were occasions when more than 45 people tried to get into the ASL and some were turned away, but there are other occasions where there are under 45 people and there are beds that remain. Could the size of the ASL actually show some intent to discriminate against non-locals? I don't believe so, Your Honor. This was created in 2009 based on estimates of what the homeless population was back then. 45 persons was the recommendation that was given. Again, it fluctuates, the population. That evidence isn't necessarily before the Court here, but during certain months more homeless individuals are present within Laguna Beach than others. There are armory shelters that open up in the winter months in portions of Orange County and some of the homeless population goes there. And now we have additional homeless shelters in Orange County and Santa Ana. Again, some of the homeless population goes there. It's a difficult number to pinpoint, but the city obviously did the best it could in pinpointing it at 45 back in 2009. Other questions by my colleague? All right. Thank you very much for your argument. So we'll hear rebuttal. Can I just ask you right offhand? You heard what opposing counsel said about the claim that your client said there was no way he was ever going to stay in the ALS in any event. He didn't want to, never intended to. What's your response to that? Your Honor, regarding those statements, Mr. Porter I'm sorry? He did say them, right? He did, Your Honor. But it's our position that whatever Mr. Porter has said since the time when he was initially injured pre-waiver anything he has said since then does not undo that injury. So once he was injured, his statements at the shelter or about the shelter, about distaste for the shelter, are irrelevant to the injury that he suffered that first day he went there. But if I understand correctly what was stated, it sounded like he never intended to stay there at any point. Did I misunderstand? That's the city's contention. That's what the writing says though, right? Yes. But Mr. Porter did go to the shelter. He presented himself there to sleep. He was told you are not allowed to sleep here because you are not a local. And that was the injury that he suffered in early 2010.  So Mr. Porter, don't bear on the fact that he was injured in 2010 and he may have developed this opinion later, but he did go to the shelter to seek shelter and was turned away because of the local's preference. Okay, so the district court erred in what? In improperly weighing evidence in favor of the moving party at summary judgment. Making this determination at the summary judgment stage was improper. The determination that was improper was what? Was that Mr. Porter's statements in his deposition were bald and uncorroborated and conclusory. And that was weighing credibility which should not be done at summary judgment. Well, your opponent says he never completed the process that would get him to the point where he would be denied admission. And I thought that the district court had that in mind. Am I just incorrect? Your Honor, the district court was incorrect. Mr. Porto, the city does argue that Mr. Porto didn't pursue the process because he didn't sign the waiver. But his deposition testimony, and in fact the policy itself, says that he was evaluated. He was evaluated at the door. He was told by staff multiple times that he could not stay there. And the policy itself gives staff the ability to make these evaluations at the door. And so he was evaluated. He doesn't need a piece of paper to tell him what he already knew. How does he maintain that he would sign the waiver? I'm sorry? Does he say that he would sign the waiver? He does not. But he was handed the waiver after months of discrimination, after months of being told that he couldn't sleep there because he wasn't a local. So why would he sign a waiver if he knew that once he did sign it he would get an equal benefit after all? Do you agree that he did not otherwise participate in the process to determine whether he was a local, whether he met the criteria to be a local? I do not, Your Honor. He did. The policy says, the policy encourages staff at the shelter to make these determinations at the door and to shoo non-locals away. We see at page 249 and 250 of the record, the May 2010 version of the policy, where the ASL staff agrees to make no representations to non-locals, that they can stay there for more than the non-local maximum of one night, and to tell people and to not tell anybody that they could stay there to make any Perhaps I didn't state it fully. What I'm trying to understand is, did he decline to participate with the staff in determining whether he was a local, not what they did with respect to non-locals? If I understood the ordinance correctly, he had an opportunity to show that he was in fact a local. There was a time period he could show that. Do I understand correctly from what your opponent said, that he refused to participate in that process? Your Honor, the city is painting the waiver itself as this gatekeeper. Let's put the waiver to the side for a moment. Of course. I want to answer this question. Did your client agree and participate in the process to determine whether he qualified as a local? Yes, because he went to the shelter seeking the opportunity to sleep there. Did he answer any questions about when he got there, et cetera, et cetera? There's nothing in the record that shows what that process would be or that he participated in that process, because nothing in the policy itself says that there is a process outside of simply the policy saying if to stay here overnight you need to meet these requirements. If that's correct, then wasn't Judge Carter correct? Because the city said your client never participated in this process, declined to do so. Your client didn't say anything one way or another according to what you just said. So it's uncontroverted. Isn't that right? I'm sorry, Your Honor, if I may if it sounded like I said that. What I am saying is the record doesn't reflect that he was asked any questions. However, he was told according to his declarations that he could not sleep there because he was not a local. So we know based on that that there was something that happened at the shelter that day that made multiple staff or those multiple days that he went there and was told he couldn't sleep there because he wasn't a local. Something happened that caused them to say that he wasn't a local. Other questions by my colleague? Thank you, Counsel. Thank you. We thank you as we did your colleagues. We thank you for your help, and we hope this hasn't been too grueling an experience for you. Thank you, Your Honor. Thank you very much, and thank you for the supervising lawyer from the law school. Appreciate it. The case just argued is submitted.
judges: Schroeder, M. Smith, Drain